UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CEBURN R. PARKER,

    Plaintiff,

v.                                           Case No. 8:21-cv-1459-TPB-SPF

PAUL DEZZI, THOMAS A.
HARMER, and TOWN OF
LONGBOAT KEY, FLORIDA,

    Defendants.
_____/

## ORDER GRANTING IN PART "DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT"

This matter is before the Court on "Defendants' Motion to Dismiss Plaintiff's First Amended Complaint," filed August 16, 2021. (Doc. 11). Plaintiff, proceeding *pro se*,[1] filed his response in opposition on August 30, 2021. (Doc. 18). Upon review of the motion, response, court file, and record, the Court finds as follows:

---

[1] Litigation – particularly in federal court – is difficult, and Plaintiff should consider hiring an attorney. If he is unable to afford counsel, he should consider resources available to pro se litigants. The Tampa Bay Chapter of the Federal Bar Association operates a Legal Information Program. Through that program, *pro se* litigants may consult with a lawyer on a limited basis, free of charge. More information about the program is available on the Court's website at http://www.flmd.uscourts.gov/legal-information-program. Additionally, librarians, lawyers, and judges from around the Middle District created a helpful guide to assist *pro se* litigants proceeding in federal court, which is located on the Court's website.

## Background

Plaintiff Ceburn R. Parker has been an employee of the Town of Longboat Key Fire Rescue since November 15, 1999.[2] Defendant Town of Longboat Key is a municipality of the State of Florida. Defendant Paul B. Dezzi is the fire chief for the Town of Longboat Key, and Defendant Thomas A. Harmer is the town manager of the Town.

On April 12, 2016, Plaintiff was diagnosed with prostate cancer. Subsequently, § 112.1816, *F.S.* (the Florida Firefighter Presumptive Cancer Disability law) was enacted, which guaranteed certain healthcare benefits to firefighters with cancer as an alternative to worker's compensation. According to Plaintiff, Fire Chief Dezzi told Plaintiff that under the law, Plaintiff would only qualify for certain benefits – such as time off for cancer medical exams – because he was diagnosed prior to the enactment of the statute.

In July 2019, Plaintiff noticed that the time entries of Lieutenant Bryan Carr – who had also been diagnosed with cancer – were coded differently than Plaintiff's entries. Believing this to be a mistake, Plaintiff corrected the other officer's entries. Plaintiff was later informed that Lieutenant Carr's entries was changed back to the original coding. Plaintiff then sent a text message to Deputy Chief Sandi Drake to "inquire" as to why the disability time accounting code was incorrect but was directed to contact human resources with his question. Instead, Plaintiff sent a text message to Lieutenant Carr "because he was being treated differently than the

---

[2] Plaintiff was initially hired as a firefighter paramedic, promoted to lieutenant, promoted again to deputy fire chief, and then demoted to firefighter paramedic.

Plaintiff for his cancer disability" and asked if Lieutenant Carr had spoken to human resources. Lieutenant Carr shared this and other text messages with Chief Dezzi.

On August 2, 2019, Plaintiff called human resources to "inquire" as to why Lieutenant Carr was being treated differently than Plaintiff. At that time, Plaintiff was informed that Lieutenant Carr did not qualify for cancer benefits, and that Plaintiff himself no longer qualified, because their cancer diagnoses occurred prior to July 1, 2019. That same day, Chief Dezzi met with Plaintiff, and according to Plaintiff, Chief Dezzi accused Plaintiff of various acts of deception related to time entries and payroll issues. Chief Dezzi also brought up the text messages that Plaintiff sent to Lieutenant Carr and stated that Plaintiff's behavior was unacceptable as a deputy fire chief. He suspended Plaintiff for five 24-hour shifts without pay. On August 8, 2019, Plaintiff filed a grievance with Defendant Thomas Harmer to address the issues raised in the amended complaint.

On August 16, 2019, Chief Dezzi told Plaintiff that he was withdrawing his August 2nd decision and issued him pre-disciplinary notice, indicating that he was considering disciplinary action against Plaintiff up to and including termination of employment. The pre-disciplinary notice included three payroll changes that appeared deceptive, two charges of insubordination, and one charge of violation of policy. Following grievance hearings, Plaintiff was demoted. On November 21, 2019, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff has sued Defendants for alleged violations of his rights. Specifically, he has asserted claims for: ADA disparate treatment against the Town (Count I), ADA retaliation against the Town (Count II), ADA hostile work environment against the Town (Count III), equal protection disability discrimination against Dezzi (Count IV), equal protection disability hostile work environment against Dezzi (Count V), and section 1983 "liability in connection with the actions of another supervisory officials" against Harmer (Count VI). Defendants seek dismissal of all claims with prejudice.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the

complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

As Plaintiff in this case is proceeding *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform with procedural rules and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

### *ADA Disparate Treatment Against the Town (Count I)*

The Town seeks dismissal of Count I, arguing that the claim should be dismissed with prejudice because Plaintiff has not alleged a comparator outside of his protected class, has not pled an actionable adverse employment action, and has not sufficiently asserted causation.

To establish a disability discrimination claim, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly-situated individuals outside of his protected class. *See, e.g., Datto v. Univ. of Miami*, 2020 WL 7344680 (S.D. Fla. Jul. 23, 2020). A plaintiff must also show that his disability is the but-for cause of the allegedly discriminatory conduct. *See, e.g., King v. HCA*, 2020 WL 5666874, at *2 (11th Cir. Sept. 24, 2020). Although a

plaintiff need not plead a prima facie case to survive a motion to dismiss an ADA disability discrimination claim, he must allege sufficient facts to plausibly suggest intentional discrimination. *See, e.g., Booth v. City of Roswell*, 754 F. App'x 834, 836-37 (11th Cir. 2018).

In this case, Plaintiff appears to allege two distinct adverse employment actions. First, he alleges that he suffered an adverse employment action when human resources revoked his future cancer benefits even though he had previously been approved for certain benefits. However, he does not plausibly allege that these benefits were revoked *because* of his disability.[3]

Second, Plaintiff alleges that he suffered an adverse employment action when he was demoted. A demotion may constitute an adverse employment action in certain circumstances. However, the facts alleged by Plaintiff make it clear that he was not demoted because he had cancer – he was diagnosed in 2016, demoted in 2019, and has not otherwise alleged any events to show a causal connection between his disability and demotion. Plaintiff has simply failed to allege sufficient facts to plausibly suggest intentional discrimination – that is, that he was demoted *because* he has cancer.

The Town further contends that Plaintiff has failed to identify any comparator that received preferential treatment. In this case, the only alleged comparator identified by Plaintiff is Lieutenant Carr. Lieutenant Carr appears to

---

[3] Logically, it would appear that Plaintiff would only be entitled to these benefits if he had cancer. Plaintiff's complaint instead focuses on the retroactivity of the firefighter cancer benefits and whether they should be available to him.

be a member of the same protected class as Plaintiff as an individual diagnosed with cancer. *See, e.g.*, *Mitchell v. Pilgrim's Pride Corp.*, 817 F. App'x 701, 710 (11th Cir. 2020). Further, based on Plaintiff's allegations, it appears that Lieutenant Carr received the same or *less favorable* treatment than Plaintiff with regard to cancer benefits. As such, Plaintiff has failed to identify a similarly-situated individual outside of his protected class that was treated differently.

Although it appears unlikely that Plaintiff will be able to do state an ADA claim, in light of Plaintiff's *pro se* status, the Court will grant leave to amend to Count I.

## *ADA Retaliation Against the Town (Count II)*

The Town seeks dismissal of Count II with prejudice, contending that Plaintiff cannot show he engaged in any protected conduct. As the basis for his retaliation claim, Plaintiff asserts that he engaged in protected activity under the opposition clause of the ADA.[4]

The Eleventh Circuit has adopted Title VII's framework for reviewing ADA retaliation claims. *Palmer v. McDonald*, 624 F. App'x 699, 702 (11th Cir. 2015) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)). To establish an ADA retaliation claim, a plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link between the protected activity and adverse action.

---

[4] The ADA prohibits retaliation against an employee who has "opposed any act or practice made unlawful by the ADA." 42 U.S.C. § 12203(a).

*Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018) (citing *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000)).

In the amended complaint, Plaintiff alleges that he engaged in protected activity by sending a text message to Lieutenant Carr because Plaintiff did not understand why Lieutenant Carr's leave coding was different than Plaintiff's leave coding. In this text message, Plaintiff *asked* whether Lieutenant Carr had spoken to human resources and indicated that they should not "let the town take advantage of us[,] the law is the law." In addition, Plaintiff alleges that he engaged in protected activity by calling human resources to *ask* why Lieutenant Carr was being treated differently than Plaintiff.

The amended complaint is not the model of clarity. Construing liberally, it appears that the crux of Plaintiff's retaliation claim is that he believed that Lieutenant Carr – an individual with cancer – was being treated differently than Plaintiff – also an individual with cancer. Plaintiff encouraged Lieutenant Carr to ask questions about the perceived situation, and Plaintiff also asked questions. But Plaintiff does not allege that he engaged in statutorily protected activity. Instead, he only *inquired* about perceived ADA violations – he did not *oppose* these violations or provide sufficient notice to the Town that he was complaining about unlawful practices in any meaningful way. *See, e.g., Kavianpour v. Board of Regents of the University System of Georgia*, 2021 WL 2638999 (N.D. Ga. Jan. 28, 2021). As such, Plaintiff has failed to plead a facially sufficient ADA retaliation clause. In light of

Plaintiff's *pro se* status, the Court will grant leave to amend to allow Plaintiff the opportunity to amend Count II.

### ADA Hostile Work Environment Against the Town (Count III)

The Town seeks dismissal of Count III, arguing that the claim is not cognizable, and even if it were, Plaintiff has failed to sufficiently plead the alleged harassment was based on his disability, or that the harassment was severe or pervasive.

In the amended complaint, Plaintiff alleges that the Town discriminated against him by creating or allowing a hostile work environment in violation of the ADA. The Eleventh Circuit has not recognized an ADA hostile work environment claim. *See Menzie v. Ann Taylor Retail, Inc.*, 549 F. App'x 891, 896 n.9 (11th Cir. 2013) ("We have never held in a published opinion that a hostile work environment claim is available under the ADA. We do not decide that issue today because [the plaintiff] never asserted such a claim."). To the extent an ADA hostile work environment claim may be cognizable, to allege such a claim, Plaintiff must allege sufficient facts to show that: (1) he engaged in protected activity; (2) after doing so, he was subjected to unwelcome harassment; (3) the protected activity was a "but for" cause of the harassment; (4) the harassment was sufficiently severe or pervasive to alter the terms of his employment; and (5) the employer is vicariously or directly liable for the environment. *Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 616 F. App'x 899, 904 (11th Cir. 2015); *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014).

"Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive." *Jackson v. State of Alabama Corrections*, 643 F. App'x 889, 891 (11th Cir. 2016). When evaluating whether harassment is objectively severe and pervasive, "courts consider the frequency of the conduct; the severity of the conduct; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with the employee's job performance." *Id*.

In this case, Plaintiff has failed to allege sufficient facts to state an ADA hostile work environment claim. As the Court previously found, Plaintiff has failed to sufficiently allege that he engaged in statutorily protected activity under the opposition clause and causation. Furthermore, Plaintiff has failed to put forth sufficient facts to show that the alleged harassment was severe and pervasive so as to alter the terms of his employment. *See, e.g., Spivey v. Enter. City Bd. Of Educ.*, (M.D. Ala. Jan. 29, 2019); *Sanford v. Rubin Lublin, LLC*, 2021 WL 3056853 (N.D. Ga. Jun. 9, 2021), *report and recommendation adopted*, 2021 WL 3073261 (N.D. Ga. Jun. 29, 2021). As such, this claim is dismissed. In an abundance of caution, the Court will grant Plaintiff leave to amend Count III.

***Equal Protection Disability Discrimination Against Dezzi (Count IV), Equal Protection Disability Hostile Work Environment Against Dezzi (Count V), and Section 1983 "Liability in Connection with the Actions of Another Supervisory Officials" against Harmer (Count VI)***

Chief Dezzi and Harmer seeks dismissal of the counts against them, arguing that the ADA does not provide a proper vehicle for the § 1983 claims, and that the same rationale requiring dismissal of the ADA claims likewise compels dismissal of the § 1983 claims.  Alternatively, Chief Dezzi and Harmer argue that the claims against them in their individual capacities should be dismissed based on qualified immunity.

"[T]he Eleventh Circuit has held that the comprehensive remedial framework of the ADA forecloses an action under section 1983 based solely on rights created by the ADA." *McNa v. Communications Inter-Local Agency*, 551 F. Supp. 2d 1343, 1348 (M.D. Fla. 2008) (citing *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997)).  Although *Holbrook* did not specifically address "whether a plaintiff alleging disability discrimination may simultaneously proceed under section 1983 for constitutional claims relating to the same discrimination," other courts considering this question have concluded that the ADA provides the exclusive remedy.  *Id.* at 1348-49 (collecting cases).  The Court agrees with the reasoning and analysis presented in these cases concerning the viability of § 1983 claims when based on alleged violations of the ADA, as Plaintiff has pled here.  Because the § 1983 claims against Chief Dezzi and Harmer are precluded here, it is unnecessary to consider the applicability of qualified immunity.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Motion to Dismiss Plaintiff's First Amended Complaint" (Doc. 11) is **GRANTED IN PART**. The motion is **GRANTED** to the extent that Plaintiff's amended complaint is dismissed. However, the Court will grant Plaintiff the opportunity to amend his claims in light of his *pro se* status, if he may do so in good faith.

2. Plaintiff is directed to file an amended complaint on or before December 10, 2021. Failure to file an amended complaint as directed will result in this Order becoming a final judgment. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of November, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**